PAGE (BUCKLEY v.). See Case No. 2,094.

PAGE (CHICAGO, B. & Q. R. CO. v.). See Case No. 2,668.

PAGE (ELASTIC TRUSS CO. v.). See Case No. 4,325.

## Case No. 10,662.

### PAGE v. FERRY.

[1 Fish. Pat. Cas. 298.][1]

Circuit Court, E. D. Michigan. Oct., 1857.

PATENTS—SPECIFICATION—FAIR DISCLOSURE—CONSTRUCTION—INTENTION OF INVENTOR—UTILITY—IMPROVEMENT—IDENTITY.

1. A patent may be considered in the light of a deed from the government, and the patentee is bound to communicate his invention in so full and clear a manner, that it shall be within the comprehension of the public at the expiration of the term.

2. The specification is intended to teach the public the improvement patented; it must fully disclose the secret; must give the best mode known to the inventor; and contain nothing defective, or that would mislead artists of competent skill in the particular manufacture.

3. It is a question of fact for the jury, whether the description in the patent is so vague or uncertain that a competent workman, in the particular business to which the patent relates, could not, from the specification and drawing, construct the machine.

4. In the construction of a patent, the intention of the inventor, so as to effect the object designed, is to govern the construction of the language employed. The court will look to the manifest design in order to remove any ambiguity arising from the terms employed; but this ambiguity must not be such as would perplex

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

an ordinary mechanic in the art to which it applies.

[Cited in Hamilton v. Ives, Case No. 5,982.]

[Cited in Burke v. Partridge, 58 N. H. 351.]

5. The utility of an invention is an essential requisite to the validity of a patent. A useless invention, even if patented, is not and will not be of any profit to the public. But a general utility is not prescribed by the statute as the test of the sufficiency of the invention. The word is used in contradiction to what is frivolous, or what is mischievous to the public.

6. An improvement has essential reference to a subject-matter to be improved. It is not an original, but embraces, and either adds to or alters, the original.

7. The statute defines the character of an expert as one "skilled in the art or science" to which his opinion or judgment appertains, or in a business or art most nearly connected with it. A practical operator and not a scientific theorist is, properly speaking, such an expert.

8. An infringement can not take place unless the invention can be fully practiced by following the specifications. An infringement is a copy made after and agreeing with the principle laid down in the patent; and if the patent does not fully describe everything essential to the making of the thing patented, there will be no infringement by the fresh invention of processes which the patentee has withheld from the public.

9. If the defendant's machine, in its original structure, was in fact and in truth no infringement, and was not intended to be so, neither accident nor usage, as the natural wear of the material of which it was composed, could make it so. Mind must be associated with matter in the commission of the trespass.

10. When, therefore, in a patent for improvements in portable circular saw mills, the patent covered merely a combination of the use of rollers, or their equivalents, for guiding the circular saw, with a saw which had free end play, so as not, in any case, to have an end bearing against a shoulder in its ordinary evolution, held, that, if the defendant's machine was originally constructed and designed with the saw tight to the shaft, so as to operate without end play, and by its usage and by the wear of metal of which the shaft was made, such free action or end play was undesignedly produced, such free end play would not amount to an infringement of the plaintiff's patent.

11. But, if a machine is constructed so as to conform in all respects to the description in the patent, except as to one particular, or as to one motion and effect, yet is so constructed and intended to obtain that motion or effect in the usage of the machine, by the action or wearing of the parts, and it is so obtained, it is a piracy of the principle and a violation of the patent.

[Cited in American Diamond Rock-Boring Co. v. Sullivan Mach. Co., Case No. 298.]

12. "Substantial identity" excludes immaterial variations or fraudulent evasions. That is a substantial identity which comprehends the application of the principle of the invention. If a party adopts a different mode of carrying the same principle into effect, and the principle admits of a variety of forms, there is an identity of principle, though not an identity of mode.

[Cited in McComb v. Brodie, Case No. 8,-708; Converse v. Cannon, Id. 3,144.]

13. The plaintiff is entitled to the actual damage sustained by the use of his improvement during the term of the illegal user, or the amount of profits actually received by the defendant, during the time he used the plaintiff's improvement.

This was an action on the case [by George Page against William M. Ferry, Jr.], tried by WILKINS, District Judge, and a jury, brought for the alleged infringement of letters patent [No. 2,174] for an "improvement in circular saw mills," granted to the plaintiff July 16, 1841, and extended for seven years from July 16, 1855. The invention consisted of combination of the free end play of the saw mandril with guide rollers at the periphery.

H. B. Northrup and G. V. N. Lothrop, for plaintiff.

James W. Campbell and Charles F. Walker, for defendant.

WILKINS, District Judge (charging jury.) This action is brought by the plaintiff to recover for an alleged infringement of a patent, for which letters patent were granted to him in 1841, in due form of law, under the seal of the patent office of the United States, conferring upon him, for the term of fourteen years, the exclusive right of making, using, and vending the invention. The action was brought in 1855.

He alleges, in the statement of his cause of action, that "he was the original inventor of a new and useful improvement in the portable circular saw mill, described in his patent, which was not known or used before; and that the defendant, on the 1st day of July, 1855, wrongfully did use, and cause to be used, his said improvement in violation and infringement of his exclusive right."

To this the defendant has plead the general issue—denying these allegations; and this affirmation upon the one side, and denial upon the other, constitute the issue which you are sworn to try. The novelty is not controverted.

The patent, with the specification, has been given to you in evidence. The material parts of it, so far as this controversy is concerned, read in this wise:

"The shaft C has free end play within the boxes in which it runs, so as not, in any case, to have an end bearing against a shoulder; it may, in fact, be a cylinder of the same diameter throughout.

"The saw is kept in place entirely by the action of two friction rollers, which bear upon its two sides, near its periphery. The friction rollers are made adjustable by causing them to revolve on pins, which are attached to two plates of metal placed one upon the other, having tightening screws passing through slots in them, and entering the frame.

"The saw is made with teeth in a peculiar form, by which they are enabled to be fed into the timber more deeply than can be done with teeth, in the forms usually employed, and be driven with a speed not exceeding one-half of the ordinary velocity; and from this circumstance, combined with the manner of sustaining it at its edge, without strain from its center, and with the manner of setting the teeth, it (the saw) is kept

free from all tendency to heating and buckling, and is thereby well adapted to the sawing of ordinary logs, which, though frequently attempted by means of the circular saw, has been abandoned, from the impossibility of causing the edge of such a saw to run true for any length of time."

Such is the material description of the alleged improvement, which is more specifically set forth at the close of the specification, in this language:

"I claim the manner of affixing and guiding the circular saw, by allowing end play to its shaft, in combination with the means of guiding it by friction rollers, embracing it near to its periphery, so as to leave its center entirely unchecked laterally."

"I do not claim the use of friction rollers guiding the edge of the saw, but limit my claim to their use in combination with a saw having free lateral play at its center."

Such, then, is the specification, embracing the improvement—for which the patent issued on which this action is brought. An improvement has essential reference to a subject-matter to be improved. It is not an original, but embraces, and either adds to, or alters the original. In this case, the improvement of the circular saw is an addition to, and not an alteration, and consequently comprehends all the subject alleged to be improved—the saw and friction rollers. By it the plaintiff is bound. He can not, nor does he seek to, set up any other invention than that here described.

The act of congress [5 Stat. 117] requires that every applicant for a patent for any new invention or discovery, shall deliver a written description of his invention or discovery, and of the manner and process of making and constructing the same, in such full, clear, and exact terms as to enable any person, skilled in the art to which it appertains, to construct the machine; and furthermore, the law requires that he shall particularly specify and point out the improvement or combination which he claims as his own invention.

So far as the patent and specifications are concerned, the interpretation of the language employed by the patentee, is with the court; while on the other hand, whether or not the description is so vague or uncertain that a competent workman, in the particular business covered by the patent, could not, from the specifications and drawings, construct the machine, is a question of fact for your determination.

In the construction of a patent, the entire specification is to be taken together, as embracing the particular description which the law requires, of the discovery, the manner of construction, and the claim of the patentee.

The specification and claim emanate from the same pen—the one can not contradict the other.

In the case under consideration, no difficulty exists as to any part of the patent, except that which relates to shaft E; and in regard to that, the terms employed, taken in connection with the declared intention of the patentee, leave no obscurity as to the alleged invention.

The intention of the inventor, so as to effect the object designed, is to govern the construction of the language he employs. Inventors are not always educated or scientific men. Some most useful inventions have sprung from an illiterate source. Genius is not always blessed with the power of language. Courts look to the manifest design in order to remove any ambiguity arising from the terms employed. But this ambiguity must not be such as would perplex an ordinary mechanic in the art to which it applies.

The answers given by Mr. Batcheldor, to a few questions propounded by the court, as to the technical signification of the phraseology, are clear, and leave no difficulty as to the correct interpretation.

"End play" is the lateral play of the shaft within the boxes in which it runs. "Free play" is its unchecked action. "Free end play" is the unchecked lateral action of the shaft in its revolutions. There is a rotary motion and there is a lateral motion, and consequently, "a free lateral play at its center," is its unobstructed freedom in lateral motion at the center of the saw.

But this free action is further described with reference to a shoulder, as being so free as not to have an end bearing upon it; and also in the alternative, when without a shoulder, having a cylinder of the same diameter throughout; for, the language is "may," not "shall;" that is, allowing the shaft to be constructed either with or without shoulders, but calling for an end-play, to prevent heating or buckling. This freedom of revolution, then, at the center, entirely unchecked laterally, being used in combination with the friction rollers, embracing the periphery of the saw, is the improvement comprehended by the patent upon the circular saw. Or, in the language of the court, on the former trial, "the patent of the plaintiff covers merely a combination of the use of rollers, or their equivalents, with a saw that has no check to its lateral motion at the center, but has free end play, so as not, in any case, to have an end bearing against a shoulder in its ordinary revolutions.

Negatively, the invention is not the "English," the "muley," or the "upright" mill, used anterior to 1841, as testified by several witnesses, and as described and used by the witness Wells, who was engaged in manufacturing lumber in St. Clair county, by the old mode, and for the last three years, by Page's portable circular saw, with the one-eighth of an inch end play. It is not the circular saw, with rollers, but without end play to the shaft, which the witness Hallett attempted to run for about three months, and

which tended to heat the saw without vibration, "crowning on one side and dishing on the other. It is not the circular saw with guides, which, from its play and revolution, as testified to by some of the witnesses, was always attended with heat and buckling. Neither is it the saw which guides alone, but their combination with necessary and sufficient end play to the shaft, "so as to leave the center entirely unchecked laterally." Words could not make the meaning plainer. The specification calls for no alteration in the ordinary circular saw, but only undertakes to improve it by giving free lateral motion at the center of the saw, in combination with the usual guides; that is, lateral motion at that point, while unchecked in its ordinary revolutions.

The shaft, in close contact with the boxes, so checked as not to admit of such proposed freedom of movement is the defect in the old saw, which was designed to be removed, or corrected, in the improvement contemplated by the patent. The center of rotary motion is at the center of the shaft, and, consequently, free, unchecked lateral motion there, is free end play to the shaft. But a checked motion, by shoulders, or rings, or any other mechanical device, keeping the saw close and tight to the shaft, is not free end play. That would not be "leaving the center entirely unchecked laterally." The court is of opinion that the patent calls for just so much lateral motion, as is necessary for the successful operation of the saw; neither does the specification forbid shoulders, by the expression employed, "that the cylinder 'may in fact' be of one diameter throughout." "May in fact be" does not signify "shall be."

Two leading ideas are contemplated or comprehended within the invention: 1st. That the cylinder shall have free end play; and, 2nd. That the friction rollers should guide the saw. The shaft is to play freely within the boxes, so as not, in any case, in any event, under any circumstances, to have an end bearing against a shoulder. A shoulder is provided for, but its place on the cylinder, so as to give to the latter a free end play, is not defined; that is left discretionary, for the cylinder may, in fact, be of the same diameter throughout. Neither is the extent of the end play expressly defined. But the shaft on which the saw runs, must not, in any case, have an end bearing against a shoulder—that is, the saw, in its ordinary motion, or revolution, must not bear or rub against the shoulder; and whether this end play be one-sixteenth or one-eighth part of an inch, is immaterial, as neither is called for in the specifications. If the proper amount can be determined by a workman experienced in mill machinery, and the structure of mills, that, and that alone, is the necessary unchecked end play called for by the patent. The precise definition of the amount of end play in the specifications would confine the improvement patented to that extent, and consequently end play, either more or less, would be no violation, and the limit could not be worthy of a patent, because worthless. For, if the specification called for one-eighth, then one-seventh or one-ninth would be no violation, and the saw could be successfully operated with either. It is a settled rule of the law of patents, "that the specification need not describe that which is within the ordinary knowledge of any workman who may be employed to put up the apparatus, or construct the machine." Such a workman, however, must have a competent knowledge of the work. That is, technically, be what the law calls an expert—one experienced or skilled in the particular business to which his testimony appertains, or with which it is most nearly connected. It was not necessary—nay, it would have been fatal to the improvement patented—to have specifically limited the amount of the end play, of lateral motion, which must be free, "leaving the center entirely unchecked laterally," and under no circumstances "having an end bearing against a shoulder." But checked end play is not unchecked end play; limited, is not unlimited; free lateral motion, is not obstructed lateral motion; having an end bearing against a shoulder, is not, in any case, having no end bearing against a shoulder. Contraries are not identities.

Having, gentlemen, thus settled the construction of the patent, which is the duty of the court, there are other questions arising on the issue, more especially for your determination.

1st. In the patent laws of the United States, it is provided "that any person having discovered or invented any new or useful art, machine, manufacture, or composition of matter, not known or used by others, before his or their discovery or invention thereof, and not at the time in public use, or on sale with his consent, and shall desire to obtain an exclusive property therein, may make application in writing," etc. The utility of the invention is an essential requisite to the validity of the patent. A useless invention, even if patented, is not, and never will be, of any profit to the public. But the law prescribes a rule, by which you must be governed in applying this test to the invention now in controversy. It is this: Is it frivolous? Is it mischievous? Is it of any use? A general utility is not prescribed by the statute as the test of the sufficiency of the invention. The word is used in contradistinction to what is frivolous, or what is mischievous to the public.

New inventions in regard to some trifling article of dress, such as hoops, or crinolines, or, in the language of Judge Story, "a new invention to poison people," are not patentable. The one is frivolous, the other mischievous.

An invention not obnoxious to these objections, whether more or less useful, if it be of any use, is embraced within the spirit of

the law. A slight improvement of an old machine is a useful improvement. But, if the alleged invention should be absolutely hurtful or injurious, it is no improvement—it is not "a useful invention," and, it is your province to determine, from the evidence of witnesses experienced in the subject-matter, the validity of this objection.

It rests altogether upon the judgment of those who are acquainted practically with the structure and operation of similar machines, involving the same principle. A saw-mill machinist, a millwright, a practical operator, and not a scientific theorist, is, properly speaking, such an expert. A mere draughtsman is not a millwright, or a sawyer; neither is the latter a competent judge as to the structure of saw mills, unless he has been practically engaged in the business of constructing as well as managing saw mills, and can speak from well-grounded personal experience. The statute defines the character of an expert, as one "skilled in the art or science to which his opinion or judgment appertains, or in a business or art most nearly connected with that to which his judgment or opinion is applied." A skillful saw-mill builder is an expert in that business; and one familiar with constructing saw mills is, in that respect, an expert; and a skillful saw-mill machine maker is an expert in the structure of saw mills, as connected with his own pursuit.

But it is objected that the plaintiff ought not to recover in this action, because the specifications and drawings are vague and uncertain, conveying no exact or definite description of the invention claimed. The law confers upon the patentee a monopoly. For the violation of this exclusive privilege, damages are awarded; and he is further protected by the infliction of a penalty. Being a monopoly, justice to the public (to whom the invention will belong at the expiration of the patent) requires that it should be so described in the specifications, in such clear, full and exact terms, that persons of competent skill and knowledge, may construct and reproduce the machine, or thing described, by following the specification, with the aid of drawings. And such is the rule of law.

The patent may be considered in the light of a deed from the government, the consideration of which is the invention specified; and the patentee is bound to communicate it, by so full, clear, and exact a description, with drawings and models, that it shall be within the comprehension of the public at the expiration of the patent, for at that period his invention becomes public property. The exclusive privilege is not conferred merely as a reward of genius, and for the encouragement of useful inventions and improvements in arts and manufactures, but also embraces the public benefit.

Whether in this case, such a full, clear, and exact description is given as to enable a competent workman—as a millwright—to construct the machine, is a question of fact for your determination.

Some, perhaps all of you—probably, also, the learned counsel—would be utterly unable, from the specifications of the patent, to construct the circular saw mill called for; yet that circumstance should not vitiate the patent, or reflect upon your intelligence. Until enlightened, as we have been during the progress of this trial, it is not to be presumed that either the bar or the jury knew much about "friction rollers," "end play," checked or unchecked, "iron journals," "sliding collars," "shoulders," "mashers," or "buckling." The skill and knowledge deemed competent is that which is addressed to the subject-matter, and is not the highest skill, or the greatest knowledge, but that of practical workmen of ordinary skill in the particular business.

Where the object of the patent may be obtained by a competent mechanic, of ordinary skill, one acquainted with the structure of similar machines, or structures involving the same principle, by fairly following out the specifications and drawings, without other inventions or additions, or experiment, the patent is valid and unimpeached, and the rule of law is sufficiently met.

The specification calls for "free end play" within the boxes, so as not to have an end bearing against a shoulder, or for a cylinder of the same diameter throughout; and the claim is for the manner of applying and guiding the circular saw, by allowing end play to its shaft, in combination with the means of guiding the saw by friction rollers embracing it near its periphery, so as to have its center entirely unchecked laterally. This the court have construed, as comprehending the use of guides, or rollers, in connection with such an amount, or extent of end play as is necessary for the successful sawing of timber. The question then arises, how could a competent mechanic, or machinist, construct such a machine; or how ascertain the necessary amount of end play, without previous experiment or information obtained from sources independent of the specifications and drawings? To which the court responds, and so instructs the jury, in the language of Curtis on Patents, adopted by Judge McLean, on the former trial:

"The statute allows the patentee to address himself to persons of competent skill in the art; and it requires him to use such full, clear, and exact terms as will enable that class of persons to reproduce the thing described, from the description itself. The ordinary knowledge of every workman so employed, is expected to be used in making the machine."

Much time has been consumed by the testimony of experts touching the character of this portable circular saw mill, combined with end play, and there has been some conflict of opinion as to the necessity of end play, and the amount required. It is for you to say whether the class of persons indicated could

reproduce the machine with the necessary end play required, from the drawings and specifications, or from either. If so, you must hold the patent valid.

Several of the witnesses have, in your presence, constructed the machine from the frame up to the disputed point—the end play—and there left the matter in doubt, some averring that they could go no further. Others have gone on to the full completion of the machine according to the specifications, giving an amount of end play deemed necessary for successful operation. You must decide on whose judgment it is safest to rely. Their credibility is also with you; and the subject has been so thoroughly discussed, in both aspects, that it is deemed unnecessary to make additional comment.

Another objection has been urged, that the patentee has withheld in his description the best mode of effecting the object designed by his specifications, and for which the patent was granted. The patentee is bound to disclose in his specifications the best method of working his machine known to him at the time of his application. An infringement will not have taken place. unless the invention can be practiced completely by following the specifications. An infringement is a copy made after, and agreeing with the principle laid down in, the patent; and if the patent does not fully describe everything essential to the making of the thing patented, there will be no infringement by the fresh invention of processes which the patentee has withheld from the public. The specification is intended to teach the public the improvement patented; it must fully disclose the secret; must give the best mode known to the inventor, and contain nothing defective, or that would mislead artists of competent skill in the particular manufacture.

In consideration of the exclusive privilege conferred, and that the public may fully enjoy the benefit of his invention, all his knowledge in respect to the perfect practice of his invention, must be embraced in his specification. Whether it is so or not, is for you to determine from the evidence submitted.

Having received, gentlemen, the construction which the court has given to the specification, and the improvement, and the invention therein set forth; being satisfied of its utility, in the contemplation of the law; satisfied that the description is so clear and full that a competent workman, in the particular business to which the machine appertains, could construct the same from the specifications and drawings, or from either, and that there has been no concealment of any power or principles, or fixtures, within the knowledge of the patentee, by which it could be worked more perfectly; your next inquiry is, has the defendant infringed upon the plaintiff's right? This is the great question of fact.

On this branch of the case, many days have been consumed in the examination of numerous witnesses. The testimony elicited is especially for your consideration. It has been mainly the judgment of experts, one class holding that the circular saw used by the defendant does not involve the combination specified in plaintiff's patent, and that no end play is necessary, the saw being worked tight to the shaft; and another class maintaining the opposite opinion, that no end play is necessary to the successful operation of the saw. It is your duty to give preponderance to one side or the other, governed by the rules of law in applying the evidence. It is the lot of human nature to err. Human judgment is fallible. The best of men, equally skilled in any art or science, or pursuit, may honestly differ. In giving preponderance to testimony, a juror should scan closely the basis on which the judgment of the expert is founded, and the position he may occupy with reference to the question.

Again: in scrutinizing the testimony, it is of importance that you should keep in remembrance the character of the plaintiff's patent; that it is not the invention of a circular saw with friction rollers, but a certain improvement of a circular saw mill previously in use, and consequently inferring a knowledge of all the essential appurtenances of the old mill. In applying the testimony, then, to this branch of the case, inquire:

1st. What is the principle of the improvement invented by the plaintiff?

2d. Is there a substantial identity between the defendant's machine and that improvement?

The first inquiry the court has already settled, and by that you are bound. The second you must determine by a just comparison of the two mills, according to the evidence.

I have used the phrase, "substantial identity," as excluding immaterial variations, or fraudulent evasions. That is a substantial identity which comprehends the application of the principle of the invention.

If a defendant adopts a different mode of carrying the same principle into effect, and the principle admits of a variety of forms, there is an identity of principle, though not an identity of mode.

To apply this rule to this case:

The vital principle, here, is the employment of free end play to the shaft, in combination with friction rollers, "so as to leave the center entirely unchecked laterally"—that is, unchecked in its revolutions laterally. Now, this principle may be used without an exact identity, by mechanical equivalents or contrivances, and if so, there would be a substantial identity, or such an arrangement of mechanism as performs the same service, or produces the same effect in the same way, or substantially the same way. Whether such exists or not, or whether there is such identity, you must determine from the testimony of those who profess to be skilled in this species of mechanism—that is, by the judgment of experts.

As a question of fact, it suffices if the principle has been pirated. Morse's telegraph invention embodies the principle of transmitting intelligence, by the electric fluid, through metal wires, from place to place. Any other mode, if such could be devised, of communication through wires, without electricity, is not identical, though it might embrace equal velocity. So, lumber may be sawed by a circular saw mill, with a shaft at right angles with the saw, controlled by friction rollers embracing the periphery—yet, if the principle of free end play, or free lateral action, in combination with the rollers, is wanting, there is no identity, no trespass upon the plaintiff's right.

The consideration has been pressed, with much force, that there is no substantial identity between the alleged improvement of the plaintiff and the machine used by defendant, inasmuch as the lateral motion in the latter is checked and governed at the center of the saw, by collars and other contrivances having that purpose in view; that free, unchecked lateral motion, to the extent, even, of one-eighth of an inch, is not necessary and not used; and that whatever end play is used by the defendant is the result, not of design in the original construction, but the natural consequence of the usage of the shaft in sawing.

If a saw mill is constructed so as to conform in all respects to the description in the patent, excepting the end play—yet so constructed and intended as to obtain the necessary end play in the usage of the shaft, by the wearing of the metal—and it is so obtained—it is a piracy of the principle.

If the principle is worth any thing, no mere evasion should be countenanced. Perfect identity is not required in order to demonstrate an infringement of principle. The variation, if any, must be a variation of principle. But if the object designed—viz: free lateral motion, leaving the center of the saw entirely unchecked—is obtained by mechanical equivalents, it would certainly constitute an infringement.

The evil sought to be remedied, as declared in the specifications, is "to keep the saw from all tendency to heating or buckling," as adapted to the sawing of ordinary logs, and "sustaining the saw at its edge, without strain from its center." If that object be effected by any other principle than that of end play in combination with the guides, it would constitute no infringement of the patent.

To illustrate: The evidence exhibits the machine used by defendants as a circular saw with friction rollers embracing its periphery. So far, the machine is identical with the representation of the patent, but no violation of the principle. The patent claims to have improved upon this.

Yet, if it further appears that free end play to the shaft was used in combination with the rollers, so as to leave the center of the saw entirely unchecked laterally, whether effected by the structure of shoulders, or by sliding collars, rings or springs, or any other mechanical equivalent (that is, a mechanical structure of equal effect), the machines, in fact, would be substantially the same, in principle. But if the machine of defendant was originally constructed and designed with the saw tight to the shaft, so as to operate without end play or free lateral motion at the center of the saw—and by its usage, and by the wear of the metal of which the shaft was made, such free action was undesignedly produced, it would not amount to an infringement of plaintiff's patent. Or, in other words, if the original structure was, in fact and in truth, no infringement, no piracy, neither accident nor usage could make it so. Mind must be associated with matter in the commission of the trespass. It is the intention which gives the guilty hue to the act. The metal, whether hard or soft, responds only to the natural law. Constant friction will measurably wear, in time, the hardest iron; and if, in such a process, the real principle of the improvement is actually obtained, no guilt should attach to the owner, in the absence of all intention to so infringe.

On this question of identity, you have had, not a living, but a sure and true witness—dumb, but yet, like Balaam's beast, speaking eloquently, as you may interpret the language it employs. The identical shaft, the controversial topic itself, has been produced before you. It is either identity or it is not—one or the other. To each part a voice potential has been given. The boxes, the shoulders, the rings, the journals, unite in one testimony—and that the court will not, but you must, construe. The witness McCrea, made it, and has testified very fully in regard to its present appearance, as compared to its condition when it left his workshop. He has given his opinion, that, from the present appearance of the journal boxes, cylinder, and shoulders, there has been wear by usage. This is the substance of his opinion. As an opinion you are not bound by it—you can judge for yourselves by inspection, for it speaks for itself.

But the testimony of this tongueless witness covers other ground, and answers not only the question whether the principle involved in the patent has been used, but is explanatory of the cylinder, whether with or without shoulders, and how far, and to what purpose they are needed.

Purposely abstaining from all comment upon the testimony, I must leave this witness with you, gratified that his iron nerves have not been disturbed, nor his temper crossed, by professional examination.

The court has been requested to instruct you upon certain legal propositions, with a view to ultimate action before a higher tribunal. This is all proper, and the request has been fully complied with, in what has already been presented. But, gentlemen, the instructions are for you, in your position, and not merely for the counsel. They are

your guides—light given you by the constitutional functionary of the law, and designed to impress your minds, in your official action, with what the court believes to be truth and law. Able and learned counsel are essential helps to the right comprehension of an intricate issue, and frequently are right when they differ from the court; but the jury would cast away all chart and compass, if they rely upon opinions of counsel against the views of the court. That these instructions may be more effectually impressed, I invoke your fixed attention while I recapitulate them in synoptical and numerical order, for your better understanding:

1. The patent of the plaintiff is for an improvement in the circular saw and guides antecedently in use, and embracing the original structure; and this circumstance should control the construction of the patent, and the application of the testimony.

2. The principle of the improvement is, "free end play to the shaft," or free lateral motion, in combination with the guides, embracing the periphery of the saw, so as to leave its center entirely unchecked.

3. In producing this, the cylinder may be with or without shoulders; that is, of equal diameter throughout, or otherwise.

4. The end play may be given to such an extent as is deemed necessary by workmen of competent skill in constructing saw mills.

5. A checked end play is end play; but whether free end play or not depends upon the fact whether it is sufficient for the successful working of the saw mill.

6. If not sufficient for that purpose, it is not for the principle claimed in the patent. If the defendant's machine had only a checked and limited end play at its center, substantially controlling the end play of the saw-shaft, in combination with the guides or rollers, it is no infringement, unless the one is a mere mechanical equivalent for the other, or unless they are identical in principle.

7. The means by which the end play is checked in the ordinary revolutions of the shaft, may be considered as mechanical equivalents for the production of the end play that is sufficient for the successful operation of the saw, and is identical in principle; and of this the jury must judge, from the testimony of experts.

8. Substantial identity is such an arrangement of mechanism as performs the same service, and produces the same effect, in substantially the same way. It is identity of principle.

9. Any utility is sufficient to sustain the patent. A machine of no utility is not patentable.

10. The specifications must be so full, clear, and exact as to enable persons of competent skill and knowledge to construct and reproduce the thing described, without invention or addition of their own, and without experiments.

11. End play might be occasioned by the long usage of the machine, in the wear of material—and, if undesignedly so, there was no trespass or wrong in defendant.

12. If the old circular saw, with guides, in use prior to 1841, can manufacture ordinary saw logs to as great, or greater an advantage than plaintiff's machine, with reference to quantity and quality, then the utility of the plaintiff's alleged improvement has been successfully assailed, and he is not entitled to recover. If end play is not necessary it is useless.

Such are the responses of the court to the legal propositions presented as the foundation of the claim of the defense. They correspond with the views entertained at the former trial—most of them in the language of the presiding judge. The great difficulty was then, as it is now, in settling the question as to the amount of end play, as none was specified in the patent. But, under the views entertained by the court, the proposition, as a question of fact, is of easy solution by the jury. Two simple questions, if answered by you affirmatively, dispose of the difficulty:

1. Was the defendant's mill run with some end play? If so—

2. Was it sufficient for the successful operation of the mill, both as to the quantity and quality of the lumber manufactured?

As I have already observed, the great mass of the testimony consists of the opinions of the witnesses, admitted as evidence, under the rule of law, that they were experts; that is, experienced in the art or mystery to which they were called to testify. In medical science a physician is an expert; in navigation a sailor. But the judgment of the physician, or sailor may be—ought to be—rejected by the jury, if satisfied that it is unworthy of credence. You are the judges of the credibility of the witnesses, and on this issue, as in all trials where facts or opinions undergo the sifting process of investigation, you are imperatively called upon to dismiss from your minds that portion of the testimony on which you can not safely rely. Confidence is essential to faith, and as you would reject a fact unworthy of belief, so should you reject a baseless opinion.

The damages which you should assess in case you find for the plaintiff, have not been made the subject of controversy. But the court will state the rule, which you can apply to that portion of the testimony having reference to the superiority of the improvement to other saws, in cutting ordinary saw logs. You should assess the actual damages the plaintiff has sustained, by the use of his improvement. during the term of the illegal user, or the amount of the profits actually received by defendant, during the time he ran his mill with the improvement of the plaintiff. To apply this rule. take one day as the measure of time. and so many thousand of lumber as the result of that time. Having

fixed the day and feet, and price in the market at the time the saw was thus used, you can arrive at a satisfactory conclusion.

If you think the plaintiff has made out his case, let your verdict be "Guilty," and assess the damages accordingly. If he has not made out his case, your verdict must be "Not guilty."

And now I leave the case with you; but before I do so, allow me to superadd one or two observations as to your official duty:

Under your obligations as jurors, you are called upon to render a true verdict on the issue of record, and according to the testimony given you in court. Your verdict will not be true, but false, if you allow yourselves to be governed by outside influences and considerations, or by preconceived opinions. The very eloquent counsel for the defense, who last addressed you (Judge Campbell), well remarked, that however his client or his fellow citizens might suffer by your sustaining the patent, it was your duty to do so, if the law and the facts would warrant it. "Let justice triumph, though the heavens should fall."

Your verdict, to be true, must be based on the evidence, and not according to your private belief independent of the evidence, and be based on all the evidence. A juror, as a judge of facts, should be without bias—have no friendships—be free from all favor or affection, in order to be "no respecter of persons," to render righteous judgment.

Sometimes a juror will enter the judgment seat, with his mind bent upon a particular course, irrespective of the law or the evidence. Such a course is highly dishonorable. It stains the soul with perjury, and pollutes the fountains of justice with the poison of prejudice. The jury box, as the bench, is holy ground, and we must put off our shoes ere we tread the sacred threshold.

A juror holds a highly honorable and important position in the administration of the law, and as he would value his own just self-esteem, let him cleave with pertinacity to the simple issue, and to the evidence admitted as bearing upon it. This is the only safe ground for both court and jury.

An agreement by you is highly important to both parties. Strive to agree. Bring your minds to settle the first principle as mainly controlling the others, viz. has an infringement been established? for, if not, the other questions are of no importance. The expense of this litigation is great to the parties, and until a verdict is rendered, no final adjudication can be had on the points involved.

The jury found a verdict for the plaintiff.

[For another case involving this patent, see Phillips v. Page, 24 How. (65 U. S.) 167.]