### DELONG v. BICKFORD and another.

*(Circuit Court, N. D. New York.  1882.)*

1. PATENTS FOR INVENTIONS—SEEDING-MACHINES.

Where the grooves in the machine of the defendants were straight, or nearly so, while those in the machine of complainant were oblique, it is not an infringement.

2. SAME—VARIANCE.

A departure of one sixty-fourth of an inch from a straight line in defendant's grooves is not a sufficient divergence to constitute an infringement of oblique grooves. A patentee must be held strictly to the language of his claim.

3. INFRINGEMENT—RESPONSIBILITY OF MANUFACTURER.

A manufacturer cannot be held responsible for any change in the form of his machine made by third parties after it has left the manufactory.

*Duell & Hey,* complainant's solicitors.  *George W. Hey,* of counsel. *F. L. Brown,* defendants' solicitor.  *Wood & Boyd,* of counsel.

COXE, D. J.  This is an equity action for infringement, by the patentee of an alleged improvement in seeding-machines, against Lyman Bickford and Helen M. Kirkpatrick, who are copartners, engaged in the manufacture of agricultural implements, at Macedon, New York. The patent was issued to complainant on the third day of June, 1879, his claim being described therein in the following words:

"In combination with a seed-box or hopper, provided with a series of discharge-openings, a rock-shaft arranged longitudinally through the seed-box, and provided at each discharge-opening with a segmental sweep, e, having in its peripheral face oblique, parallel grooves of uniform width, constructed and operating substantially in the manner herein described."

Complainant's Exhibit No. 3 is apparently constructed in exact accordance with the specifications of the patent, the only appreciable difference being that in the patent the thrust of the seed from end to end of the hopper, when the machine is on a lateral incline, is prevented by the circular sweeps; in the exhibit the same result is

attained by partitions placed at regular intervals along the interior of the hopper. This exhibit (No. 3) was made by the defendants, and was made subsequently to the date of the patents.

Complainant's alleged invention first assumed tangible shape and form in the winter of 1878–9. He insists, however, that the idea which afterwards developed into the patented device, occurred to him during the previous winter. During both winters he was in the employ of the defendants, as pattern-maker, at their works at Macedon. Defendants were first informed of complainant's patent by a letter from his solicitor in July, 1879. Since that time it is admitted that very few seeders like Exhibit 3 have been constructed by them.

The proof establishes the further facts that the complainant had made no objection to the use of his device by the defendants until about the time of the formal notification, and that he had not, prior to that time, as against them, asserted any right as inventor. In August, 1879, the defendants commenced the manufacture of seeders with straight instead of oblique grooves on the periphery of the sweeps. A model showing their device was introduced in evidence as "Bickford Seeder of 1880." As no obliquely-grooved sweeps were manufactured by the defendants, except at a time when they had a constructive license to use them, and as the number of seeders so made hardly exceeded 12 in all, it will readily be perceived that the question of infringement has reference alone to the "Bickford Seeder of 1880."

The defendant introduced a number of prior letters patent to show the state of the art, and for the purpose of disputing the novelty of complainant's design.

The Kuhns patents for grain drills, issued in the years 1876 and 1877, and the Stoner, in 1861, show seed-wheels revolving, instead of oscillating, with oblique parallel grooves or partitions, of uniform size, but open at only one end.

The Westcott patent for seeding-machines (1876) shows a revolving seed-wheel, with straight flutes, allowing the free access of the grain both to the periphery and to the ends of the flutes, and with an oblique discharge orifice.

The McSherry patent (1864) covers a seed-wheel with oblique flutes. In this patent the inventor says of his device, *inter alia:* "I do not claim a spiral-threaded feeder, placed at or near the bottom of the seed-hopper, this having been before used."

In the Keeler and Barthel patent, 1862, on seeders, having revolving seed-wheels with oblique grooves, the following language of the patentees is suggestive:

"We are aware that rollers or cylinders having a flange fixed on one side and diagonal ridges or partitions on their face open on the other side, unprotected by an adjustable outer flange, have been used, as well as others having spiral flanges placed in a reverse position open and unprotected on both sides, * * * neither of which devices we claim."

All of the devices covered by the foregoing patents are provided with oblique or parallel grooves on the seed-wheels.

The Crowell patent, 1865, the Ingels patent, 1859, and the Keeler patent, 1864, all show a rocking shaft working in a concave trough or hopper.

The Thomas and Mast patent, 1866, for seed-planters covers an invention almost exactly identical in all its essential particulars with the complainant's contrivance. The description, so far as it refers to the rock-shaft and hopper, would hardly seem out of place if found in the complainant's patent as descriptive of his device. It is conceded by his counsel that "this patent shows all the features of complainant's invention, excepting the segmental sweep provided upon its peripheral face with oblique parallel grooves of uniform widths, whereby the seed is conveyed in a uniform stream to the discharge openings from both sides thereof."

Criticism is made that the Thomas and Mast patent was not pleaded by the defendants. It was admitted by stipulation, subject to all objections, one of the objections being that it cannot be used to anticipate complainant's patent for the reason that there is no allegation to that effect in the answer. Doubtless the learned counsel for the complainant is strictly right in this view, and yet it is admitted that the patent is properly in evidence to restrict complainant's claim, and to show the state of the art. The foregoing facts are, it is thought, sufficient to present a clear understanding of the various questions involved.

The defendants interpose five separate defenses, viz.: *First*, that the complainant is not the inventor of the device in controversy; *second*, that the defendants have acquired a constructive license to manufacture under the patent, assuming it to be valid; *third*, that in view of the state of the art the device in question did not involve invention; *fourth*, that the patent is not practical, and is worthless; *fifth*, that the defendants have not used the patented device.

It seems clear that Delong's patent must be restricted to the oblique parallel grooves on the face of the sweep; and, without deciding the somewhat doubtful question of the originality of the alleged invention, I shall confine myself to a consideration of the last of the above-named defenses, viz., assuming the patent to be valid, have the defendants used the patented device? The discussion of this question, as before stated, must be confined to the "Bickford Seeder of 1880." It was so treated by counsel both in their oral and printed arguments.

Does the defendants' seeder constitute an infringement? It seems plain that it does not. The only feature of complainant's device that was not known in the art long prior to his patent, whether the component parts are segregated or considered in combination, is the obliquity of the grooves on the face of the sweeps. The complainant has endeavored to show that the Bickford seeder is provided with obliquely-grooved sweeps. The defendants, on the contrary, contend that the grooves are straight. I think counsel are right in so construing the patent, which makes no claim for straight grooves; and the patentee must be confined to the language of his claim. Are the grooves on the defendants' sweeps straight? Mr. Gallup and Mr. Bickford both testify that the seeders manufactured by them are constructed with a segment of a wheel having corrugations running squarely and straight across its face. They then present a rough model representing a section of the seed-box, rocker, and sweeps manufactured by them, on which the grooves certainly appear straight to the eye. A great part of the evidence of complainant in rebuttal, however, was directed to showing that the grooves in this exhibit were not in fact straight, but were in some instances out of true, there being more or less divergence about them all, which, it is insisted, constitutes a colorable evasion of the patent. The test was made by placing a straight-edge in the grooves of the inverted sweep, and it was thus ascertained that in the first segment there was a very slight divergence from a line drawn parallel with the axis of the shaft; in the second the grooves were nearly straight; in the third the divergence was one thirty-second of an inch, and in the fourth and fifth one sixty-fourth of an inch, on the face of the sweep, which is less than an inch in width. With one exception, the variations might have been occasioned by poor casting; but in any view they are so infinitesimal that I could not regard them as sufficient to constitute an infringement, even if all the seeders manufactured by the defendants were similarly constructed. Complainant, as shown by drawings

attached to his patent, most surely contemplated a very different degree of obliquity than is here found. In my judgment the sweeps in the exhibit do not diverge sufficiently to lose whatever advantage may be derived from having the grooves straight, or to gain any benefits asserted for those that are oblique. If, in the complainant's claim and specifications, the word *oblique* were stricken out, and the word *straight* substituted in lieu thereof, there would then be foundation for the argument that the Beckford seeder of 1880 was an infringement. As it is, however, the defendants are much nearer to the Thomas and Mast design than to the design of the complainant.

It was further argued that because defendants' sweeps were attached to the shaft by a single screw, it might in operation become loosened and form a pivot; thus in fact giving a spiral or oblique direction to the flutes; or that the person operating the machine might, by intentionally loosening the screw, produce a similar result. Whether a sweep with straight grooves so vibrating, would infringe one with oblique grooves held stationary, it is not necessary to decide, for it cannot be said, in the absence of evidence, that the defendants' machines are improperly or negligently constructed, or that the defendants should be held accountable for something that may be done to their seeders after they have left the manufactory. Their straight sweeps might, in these circumstances, be entirely removed and complainant's oblique sweeps substituted, but the person who so changes the machine, and not the defendants, should be held responsible. It would seem that a single screw is amply sufficient to hold these small sweeps in position; they work slowly in yielding grain, and are not subjected to any violent resistance or sudden shock. Upon this branch of the case, then, my conclusion is that the complainant's patent, assuming it to be valid, covers only the oblique grooves, and these defendants do not use.

It follows that the bill must be dismissed.