WINSLOW v. BRONSON et al.

(Circuit Court, W. D. New York. November 15, 1900.)

No. 6,640.

PATENTS—INFRINGEMENT—FOUNTAIN INKSTANDS.

The Guinter patent, No. 428,753, for a fountain inkstand, was not anticipated, and is valid. But the device shown, which is an inkwell having a dip tube with a funnel-shaped top, passing through an inverted, cup-shaped, flexible rubber diaphragm, the compression of which, by pressing the tube downward with the pen, causes the ink to rise in the tube, is a new combination of old parts, the distinguishing feature being that, unlike former devices, the flexible diaphragm is not secured to the perforated metal plate on which it rests, but sits loosely upon it, so that it can be raised to permit the filling of the well through the tube without removal of the parts, and also permits the escape of air, which prevents the ink from overflowing from expansion when in a heated room; hence the claims are limited to such construction, and are not infringed by an inkstand which lacks that feature.

In Equity. Suit for infringement of patent. On final hearing.

Horace E. Deming (Clifton V. Edwards, of counsel), for complainant.

William J. Tully (James L. Norris and George W. Rea, of counsel), for defendants.

HAZEL, District Judge. By the bill in this case the defendants, co-partners doing business under the firm of Bronson Inkstand Company, are charged with the infringement of letters patent No. 428,753, granted May 27, 1890, to Ferdinand Guinter, and thereafter duly assigned to the complainant. The invention of the patent relates to fountain inkstands, and the patentee states:

"The objects of my invention are to provide a new and improved inkstand of the class specified, that shall be simple in construction. practical in operation. that may be filled without the removal of any part, and the parts of which may be readily separated and replaced for cleaning or other purposes."

The patentee, in his testimony, states that:

"A further object was to construct a well from which the ink could not overflow when standing in a warm room."

The specifications of the complainant's patent stated that:

"The invention has relation to improvements in that class of inkstands in which the ink is contained in an air-tight cistern, through the top of which is inserted a vertical sliding tube with a funnel or cup shaped top, having its lower end submerged in the ink; and by the depression of which the air in the cistern will be compressed, and force the ink through the tube into its top."

The inkstand is so constructed that in the interior thereof is provided a cup with a circular cavity, having an opening at the top and an opening at the bottom; a tube in the center, guided in its movements by these upper and lower openings, and supported upon an elastic, inverted, cup shaped diaphragm; the elastic diaphragm being located within the cavity, and its lower edges resting upon the rigid diaphragm formed by the floor of the cavity; so that the operative parts of the well were thus practically all contained within the cap, and protected from the atmosphere. This arrangement, it is claimed by the complainant, provides steady and accurate guides for the dip funnel, and insures that only a definite and certain quantity of ink will be raised to the dip cup each time the funnel is depressed, thus avoiding an overflow of ink from the funnel consequent upon a slight depression with the pen in the funnel.

The defense is that, if the claims for the patent are construed to have sufficient scope to include the inkstands of defendant's manufacture, then said claims and the patent are void, because of anticipation in the prior art; and, on the other hand, if the claims to the patent are given a restricted construction by limitation to the particular arrangement and operation of the component parts set forth in the specification and drawing of the patent, then the defendant's inkstands do not embody that arrangement or operation, and do not, therefore, infringe the patent.

The defense that the patent is void because of anticipation in the prior art is relied on by the patents issued to John R. Droney, No. 421,126, granted February 11, 1890; to Albert E. Dain, No. 428,554, granted May 20, 1890; also in Great Britain by letters patent to Felix v. d. Wyngaert, No. 15,393, granted December 15, 1885; Gerald W. Von Nawrocki, No. 4,116, granted November 5, 1887; and in Germany by letters patent to Felix v. d. Wyngaert, No. 36,603, granted February 25, 1887. In the Droney patent an inkwell is shown which

has the elements of complainant's patent, except that the elastic diaphragm is not arranged in the same manner as in the patent in suit. It is clamped at its outer edges against the rigid diaphragm, and it cannot be refilled by lifting the ink tube and ink dip cup as in the patent in suit; and in this regard it seems to me that the patent in suit has a decided advantage over the prior art. In the manner of operation for bringing the ink into the dip cup or funnel for use it is precisely the same as the operation shown in complainant's patent. While it appears that the Droney inkstand and the devices contained therein show some of those contained in the patent in suit, yet it is essential to ascertain whether or not the differences in respect to the elastic diaphragm, and its method of arrangement, are not of such a nature that the elastic, inverted, cup-shaped diaphragm, which is new, and unknown to the prior art, carries with it an improvement which tends to make the inkwell valuable and economical. The patentee doubtless had in mind, in making the elastic diaphragm cup-shaped, that the pressure upon the tube when the latter was pressed down by the pen would hold the edges of the elastic diaphragm close enough against the rigid diaphragm to cause the air in the well to be compressed, and raise the ink in the dip tube upon the depression of the dip cup, and to render it unnecessary to fill the inkwell by dismembering it, or to let in air, or clean it out. With the Guinter construction the inkwell is filled by simply lifting tube (F) sufficiently high to raise the diaphragm (I) out of engagement with the diaphragm (D), so that ink may be poured through the tube (F), and the air which is in the cistern may escape between the diaphragm (D) and the diaphragm (I). Another advantage attained by the patent in suit, and resulting from the use of the loose, inverted, cup-shaped diaphragm, is that the ink will not overflow when the well is left in a warm room. It is insisted that in inkwells of the prior art, where the flexible diaphragm is fixedly clamped against the body of the inkwell, the air cannot escape from the cistern to the atmosphere, and therefore, oftentimes, especially when the inkwell is left in a warm room, the ink in the inkwell to some extent expands, and causes a pressure, which forces the ink to rise in the funnel and overflow. While a combination of old devices into a new article without producing a new mode of operation is not invention, yet it is well settled that changing the relative positions of the parts of an invention does avert infringement where the changing of those positions changes the functions of the parts so that substantially a different mode of operation results, even though the invention remains the same. Fountain inkwells were for some years prior to this invention in general use, and in all of the inkwells having a dip tube and funnel, where it is sought to cause the ink to be raised in the tube for the purpose of supplying the pen, the functions in that regard are the same. A fixed diaphragm is not new; it may be found in the Droney patent. A flexible rubber diaphragm is not new; it is found in the Wyngaert well. But in none of these inkwells do we find the advantage which is claimed by the patentee herein. These advantages are due to an elastic cup-shaped diaphragm, fitting or resting loosely upon the rigid diaphragm over a central orifice and a series of smaller orifices.

The pressure of the dip tube by the pen will be sufficient to hold the edges of the elastic diaphragm close enough against the rigid diaphragm to form a closure causing the air in the well to be compressed, thereby raising the ink in the dip tube. Depressible funnel inkwells employing a rubber diaphragm in the prior art had clamped the rubber tightly to the body of the well, so that it was necessary to disconnect or disjoint the well to fill it, clean it out, or admit air. Guinter, the inventor of the patent in suit, by his patent has changed this so that his inkwell is substantially a different combination. In the English patent of Wyngaert of 1885 it is not claimed that the inkwell there described may be filled without the removal of any part. Its flexible diaphragm is rigidly and fixedly attached to the stopper of the rigid diaphragm, and ink is raised into the tube on two pressures with the pen on the dip cup. The initial pressure of the pen thereon merely places the ink tube in the proper position with the parts therein in alignment with the parts in the surrounding tube to receive the ink, and upon further pressure the ink is forced up into the ink dip. The German patent issued to Wyngaert in 1886 does not change the combination or the functions of the parts contained in the English patent. The English patent of Von Nawrocki has no diaphragm of the kind contained in the inkwell of the patentee in suit, nor has it a flexible diaphragm which would serve the purpose claimed for the flexible diaphragm in suit. In the Von Nawrocki inkwell, it is necessary to screw the dip cup up and down that the ink may be raised, and it then remains in the same position where it is left by the operator. The ink does not come to the surface by the operation of pressing the pen upon the dip cup, and when the pen is supplied with ink from the dip cup it recedes to the well. In the Dain patent we miss the circular cavity which served as an outer and lower guide for the dip stem, and as a protection for the flexible rubber diaphragm, which serves the purpose of compressing the air into the well, so as to force the ink to the top. This inkwell cannot be refilled without removing the stopper or dismembering the well.

Although the elastic diaphragm is in the prior art, yet the idea, the conception of the cup-shaped rubber diaphragm, and its connection with the dip-cup stem, and the method of placing or resting the same upon the rigid diaphragm, the use and purpose served by this combination, is not anticipated by the prior art. It seems to me that the devices or combinations which bring about this result are new, and involve patentable novelty. It is held that:

"A patent need not be new in all its elements, as well as in the combination, if it is for a combination. Such a theory cannot be maintained. If it were sound, no patent for an improvement on a known contrivance or process could be valid. And yet the great majority of patents are for improvements in well-known devices or in patented inventions. Changes in the construction of an old machine which increase its usefulness are patentable." Cantrell v. Wallick, 117 U. S. 694, 6 Sup. Ct. 973, 29 L. Ed. 1018.

And in Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177, it is held that:

"A new combination of known devices, whereby the effectiveness of the machine is increased, may be the subject of a patent."

I do not think that the Guinter inkwell constitutes an infringement. While it may be said to consist of a technical combination consisting of certain elements which are visible in the prior art, all the elements used by Guinter are not used in the same way in the patent in suit, and really bring about performance of new functions. Having taken the view of complainant's patent that it is not anticipated by the prior art, it is unnecessary to take up the question urged by complainant's counsel that only those patents set up by the answer which antedate the first week in January, 1890, can be considered, because of the prior date of invention of the patent in suit.

I am now brought to a consideration of the defendants' patents. These patents were granted to C. B. Smith, of Warren, Pa.,—No. 526,059, dated September 18, 1894, and No. 595,739, dated December 21, 1897. The object stated in the latter patent is to improve fountain inkstands, and "to perfect a construction wherein the elastic diaphragm is housed within a stopper fitted air-tight within the mouth of the inkwell, and to provide novel means whereby a fresh supply of ink can be conveniently introduced into the inkwell without detaching or removing the stopper from the mouth of the inkwell." The proofs show that complainant's Exhibits 7 and 8 are manufactured by the defendants according to plans shown in Fig. 1 of the drawing of said Smith patent, and Exhibits 10 and 11 according to the plan exhibited in Fig. 2 of said letters patent. Without setting forth the details of the plans under which said inkwells are manufactured, it is sufficient to point out that in the defendants' inkwell a soft rubber diaphragm does not loosely rest upon a rigid diaphragm on the bottom wall of the cover, but is firmly clamped thereto by a screw plug for the purpose of preventing the escape of the ink should the well be overturned. This well is covered by a stopper composed of a top wall and a bottom wall, and the elastic or rubber diaphragm, as we have seen, is clamped firmly to the bottom wall by means of the screw-threaded plug. The ink tube has a stem, which passes through the elastic diaphragm. The purpose of clamping the diaphragm against the bottom walls seems to be that, should the inkwell be overturned or upset, the ink will not escape therefrom. While in complainant's patent, because the rubber diaphragm rests loosely upon the fixed diaphragm, if the ink well were to be overturned, the ink would readily escape through the orifices, and then through the mouth of the well, on which the dip tube rests. Without going into a more extended description of defendants' inkwell, it may be said that, in the view the court takes of complainant's patent and defendants' patent, defendants' inkwell more nearly follows the construction of the Droney patent than the construction and arrangement of the patent in suit.

It is insisted on by counsel for complainant that complainant's patent is chiefly distinguishable from the prior art in the fact that his inkwell can be refilled by merely lifting the ink tube and ink dip cup. It is equally insisted by counsel for defendants that defendants' inkwell is distinguishable from that of complainant's in this: that defendants' inkwell cannot be so operated, and that in this respect defendants' inkwell is more like the Droney patent in operation than

like the patent in suit. I am constrained to agree with counsel for defendants. Defendants' inkstand cannot be filled in the manner of complainant's patent. The screw plug which covers the rubber cup-shaped diaphragm, and thereby aids in clamping it to the bottom wall of the cover, is not an infringement of complainant's patent. Defendants' patent does not carry out the operation which distinguishes complainant's patent from the prior art. This also applies to complainant's Exhibits 10 and 11, although in the inkwell described by these exhibits, the screw plug for clamping the rubber diaphragm to the bottom wall of the cover is omitted. Instead thereof the lower edge of the diaphragm is flanged inwardly in such a manner that it is firmly clamped to the bottom wall of the cover, so as to prevent the escape of ink should the stand be overturned; and, upon lifting the ink dip cup and stem, the rubber diaphragm is not lifted therewith, and will not leave its connection with the bottom wall of its cover, and in this respect, like Exhibits 7 and 8, is distinguishable from complainant's patent.

Complainant further insists that in filling defendants' inkwell it is admittedly necessary to unscrew the screw plug, and also that it is not necessary to entirely remove it; that, when unscrewed sufficiently to loosen the contact between the diaphragms, the dip tube can be slightly lifted, and ink poured in the cistern through the tube in exactly the same manner as in the Guinter well; that, although the screw plug retains the stem and diaphragm in proper position, the latter are susceptible of convenient detachment or removal whenever necessary, and that using the same is a mere evasion, and mere colorable claim to invention. This contention is not maintainable, for it is held that:

"When a patent has been issued for an invention, which consists in a peculiar arrangement of old elements or parts, it must be construed strictly, and the monopoly limited substantially to the special character of the parts and the particular organization described. A machine which may be forced to produce a similar result will not be regarded as an infringement if that was not the object of its construction." Buzzell v. Andrews (C. C.) 25 Fed. 822; Delong v. Bickford (C. C.) 13 Fed. 32; Page v. Ferry, 1 Fish. Pat. Cas. 298, Fed. Cas. No. 10,662.

For the reasons stated, I conclude that Guinter's patent, No. 428,753, is not infringed. Decree dismissing complaint may be entered.